ATTORNEYS FOR APPELLANT
Randall J. Hammond
Randy M. Fisher
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 02S04-0803-CR-137

TODD JENSEN,

*Appellant (Plaintiff below),*

v.

STATE OF INDIANA

*Appellee (Defendant below).*

Appeal from the Allen Superior Court, No. 02D04-9903-CF-129
The Honorable Frances C. Gull, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 02A04-0706-CR-351

**April 30, 2009**

**Rucker, Justice.**

**Summary**

In an opinion handed down today we concluded the Indiana Sex Offender Registration Act ("Act"), as applied in that case, violated the prohibition against ex post facto laws contained in the Indiana Constitution. See Wallace v. State, No. 49S02-0803-CR-138, ___ N.E.2d___, (Ind. Apr. 30, 2009). As we explain below the Act does not violate the Indiana constitutional ban on ex post facto laws as applied here.

**Facts and Procedural History**

In 1999, Todd L. Jensen was charged with count one vicarious sexual gratification, as a Class C felony, count two child molesting, as a Class C felony, and count three child molesting as a Class A felony. Under terms of a plea agreement Jensen pleaded guilty to the two Class C felony counts on January 18, 2000. The trial court sentenced Jensen on February 18, 2000, to a concurrent term of six years with three years executed and three years suspended to probation. Under terms of the Act then in effect Jensen was required to report and register as a sex offender for a period of ten years.

Jensen was released from prison and began the probationary period of his sentence on July 12, 2001. He was released from probation on July 12, 2004. Since his release, Jensen has annually reported and registered as a sex offender.

Effective July 1, 2006, the Legislature amended the Act in several respects. Significant to the case before us is an amendment requiring lifetime registration for a defendant whose offense qualifies the defendant as a "sexually violent predator."[1] Ind. Code § 11-8-8-19 (2006).

---

[1] Both before and after the 2006 amendment, "sexually violent predator" was defined as "a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly [commit sex offenses]." Ind. Code § 35-38-1-7.5(a) (formerly Ind. Code § 5-2-12-4.5).

Vicarious sexual gratification – one of the offenses to which Jensen pleaded guilty – falls within that category. Ind. Code § 35-38-1-7.5(b) (2006). In 2006, the definition of "sexually violent predator" contained no limitation on the date of a conviction that could qualify an offender for the designation. Id.[2]

On September 20, 2006, the Sex Offender Registration Coordinator for the Allen County Sheriff's Department informed Jensen that he would have to register for life as a sexually violent predator. In response Jensen filed a motion with the trial court to determine his registration status. After a hearing the trial court found Jensen to be a sexually violent predator and determined that Jensen must register for life. Jensen appealed raising three claims: (1) the Act violates the ex post facto provisions of both the Indiana and federal Constitutions, (2) the Act violates his rights to life, liberty, and the pursuit of happiness under the State and federal Constitutions, and (3) Jensen's plea agreement was rendered involuntary because Jensen was not advised that he would be required to register for life as a sex offender. Finding the first claim dispositive, a divided panel of the Court of Appeals reversed the trial court's order and instructed the trial court to enter an order determining that Jensen's registration requirement is ten years. Jensen v. State, 878 N.E.2d 400, 403-04 (Ind. Ct. App. 2007). Having previously granted transfer we now affirm the judgment of the trial court.

**Discussion**

**I.**

The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. The Indiana Constitution provides that "[n]o *ex post facto* law . . . shall ever be passed." Ind. Const. art. I, § 24. Among other things, "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1867)). The underlying purpose of the

---

[2] In 2007, the Act was made to apply to persons, "released from incarceration, secure detention, or probation for the offense after June 30, 1994." Ind. Code § 35-38-1-7.5(b) (2007).

3

Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties. Armstrong v. State, 848 N.E.2d 1088, 1093 (Ind. 2006).

Jensen contends that as applied to him the Act violates both the Indiana and federal constitutional prohibitions against ex post facto laws. In Wallace we noted that the United States Supreme Court has concluded that the State of Alaska's Sex Offender Registry Act, which is very similar to Indiana's Act, does not violate the Ex Post Facto Clause of the United States Constitution. Wallace, ___ N.E.2d ____, slip op. at 4. We thus proceeded to evaluate Wallace's claim under the Indiana Constitution albeit adopting the same analytical framework the Supreme Court employed to evaluate ex post facto claims under the federal constitution. Id. at 10. We do the same here. "This Court has long observed that even when confronted with similarly worded provisions in the federal constitution, we will nonetheless apply an independent analysis when interpreting provisions in our own constitution." Id.

In evaluating ex post facto claims under the Indiana Constitution we apply what is commonly referred to as the "intent-effects" test. Id. at 10. Under this test the court must first determine whether the legislature meant the statute to establish civil proceedings. Id. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results. If, however the court concludes the legislature intended a non-punitive regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what was intended as a civil regulatory scheme into a criminal penalty. See Id.

A.     Whether the Legislature Intended to Impose Punishment

We first observe that "it is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement." Wallace, ___ N.E.2d at ___, slip op. at 12 (quoting Spencer v. O'Connor, 707 N.E.2d 1039, 1043 (Ind. Ct. App. 1999)). In the absence of a stated purpose, one way to determine legislative intent is to examine where the statute is located within the Code. Roberts v. Sankey, 813 N.E.2d 1195, 1198

4

(Ind. Ct. App. 2004). See, e.g., Kansas v. Hendricks, 521 U.S. 346, 361 (1997) (fact that the Kansas Sexually Violent Predator Act was placed in the probate code rather than the criminal code indicated a legislative intent to create a civil proceeding). However such an examination is of little help here because although the statutory provision for determining that a person is a sexually violent predator is placed within the criminal code, see Ind. Code § 35-38-1-7.5 (2006), the provision for registration and the duration of the registration period is placed within the statutory code provision dealing with the Department of Correction. See Ind. Code § 11-8-8-19 (2006).[3]

In any case, even though we are not aided by an express statement of legislative intent, we are aided by the principle that every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. Id. "If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless the unambiguous language of the statute requires that conclusion." State Bd. of Tax Comm'rs v. Town of St. John, 702 N.E.2d 1034, 1037 (Ind. 1998).

In this case, Jensen cites no evidence of a punitive intent on the part of the legislature with respect to the 2006 amendments. Thus, we presume that the legislature's intent was civil and regulatory, and not criminal or punitive in relation to the claim that the Act is an ex post facto violation.

B.      Whether the Effect of the Act is Punitive

In assessing a statute's effects we are guided by seven factors that are weighed against each other: "[1] Whether the sanction involves an affirmative disability or restraint, [2] whether

_____

[3] But see Thompson v. State, 875 N.E.2d 403, 409 (Ind. Ct. App. 2007) (declaring that this ambiguous Code placement "does not provide us with a vehicle for stating with certitude that the provision is clearly not penal in nature but rather is purely regulatory").

5

it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned." Wallace, ___ N.E.2d at ___, slip op. at 11 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)) (alterations in original). No one factor is determinative. "[O]ur task is not simply to count the factors on each side, but to weigh them." Id. (quoting State v. Noble, 829 P.2d 1217, 1224 (Ariz. 1992)). We address each factor in turn.

### 1. *Affirmative Disability or Restraint*

We first ask "[w]hether the sanction involves an affirmative disability or restraint." Mendoza-Martinez, 372 U.S. at 168. As we point out in Wallace the Act imposes significant affirmative obligations and a severe stigma on every person to whom it applies. Among other things the Act compels affirmative post-discharge conduct (mandating registration, re-registration, disclosure of public and private information, and updating of that information) under threat of prosecution. Ind. Code §§ 11-8-8-8, -14, -17 (2006). The duties imposed on offenders are significant and intrusive, including allowing in home personal visitation for verification of the offender's address, id. at -13, and carrying a valid identification at all times, id. at -15. All sex offenders who change residences must notify local law enforcement within seventy-two hours. Id. at -11. Through aggressive notification of their crimes, the Act exposes registrants to profound humiliation and community-wide ostracism. And the practical effect of this dissemination is that it often subjects offenders to "vigilante justice" which may include lost employment opportunities, housing discrimination, threats, and violence. Wallace, ___ N.E.2d ___, slip op. at 11 (citing Spencer, 707 N.E.2d at 1045); see also Doe v. Pataki, 120 F.3d 1263, 1279 (2d Cir. 1997) (noting that "sex offenders have suffered harm in the aftermath of notification – ranging from public shunning, picketing, press vigils, ostracism, loss of employment, and eviction, to threats of violence, physical attacks, and arson").

6

But the foregoing "disabilit[ies] or restraint[s]" applied to Jensen even before his offense qualified him as a sexually violent predator. That is to say at the time Jensen pleaded guilty he was required to register for ten years. Nothing mentioned above imposes any greater burden on Jensen or has any greater adverse affect now that he is required to register for a longer period.

We do acknowledge at least two differences. Unlike other offenders, offenders determined to be sexually violent predators must (1) inform local law enforcement authorities of their plans to travel from their principal place of residence for more than 72 hours, Ind. Code § 11-8-8-18 (2006), and (2) re-register for the rest of their lives, id. at -19.[4] These restraints lean slightly in favor of treating the effects of the Act as punitive when applied to Jensen.

## 2. *Sanctions that have Historically been Considered Punishment*

We next determine "whether [the sanction] has historically been regarded as a punishment." Mendoza-Martinez, 372 U.S. at 168. As we noted in Wallace, the Act does not expressly impose sanctions that have been historically considered punishment. And because sex offender registration and notification acts are of relatively recent origin, some courts addressing the issue have determined there is no historical equivalent. Wallace, __ N.E.2d __, slip op. at 12. However, associating ourselves with the Alaska Supreme Court, we agreed that, "the dissemination provision at least resembles the punishment of shaming." Id. at 12-13 (quoting Doe v. State, 189 P.3d 999, 1012 (Alaska 2008)). In this case the extensive information available for mass distribution is itself notice to the public that the offender is someone to be shunned. And this is so whether the offender must provide the information for ten years or for a lifetime. But the 2006 amendment to the Act imposed an additional "shaming" punishment to which Jensen was not previously exposed, namely: posting the face of a sexually violent predator on a webpage under the label "Sex Predator." See Ind. Code § 11-8-2-13; Indiana Sheriffs' Sex and Violent Offender Registry, http://www.insor.org (last visited April 23, 2009). "Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed," Lynce v. Mathis, 519 U.S. 433, 441 n.13 (1997) (citing Calder v. Bull, 3 Dall.

---

[4] Since 2007, sexually violent predators have been required to register every 90 days, as opposed to annually. Ind. Code § 11-8-8-14 (2007).

386, 390 (1798)), implicates the ex post facto provisions of the Federal Constitution as well as the Indiana Constitution. We conclude therefore that the second Mendoza-Martinez factor leans in favor of treating the effects of the Act as punitive when applied to Jensen.

### 3. Finding of Scienter

Third, we consider "whether [the statute] comes into play only on a finding of *scienter*." Mendoza-Martinez, 372 U.S. at 168. "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." Wallace, ___ N.E.2d at ___, slip op. at 13 (quoting Kansas v. Hendricks, 521 U.S. 346, 362 (1997)) (alterations omitted). If a sanction is not linked to a showing of *mens rea*, it is less likely to be intended as punishment. As we observed in Wallace the Act "overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction." Wallace, ___ N.E.2d at ___, slip op. at 14. In like fashion, here the Act makes Jensen's criminal conviction for vicarious sexual gratification a prerequisite for registration and notification as a sexually violent predator. This third factor slightly favors treating the effects of the Act as punitive when applied to Jensen.

### 4. Traditional Aims of Punishment

We next ask "whether [the statute's] operation will promote the traditional aims of punishment – retribution and deterrence." Mendoza-Martinez, 372 U.S. at 168. The underlying assumption is that if the statute promotes the traditional aims of punishment, the statute is more likely punitive than regulatory. First, we observe that under the Indiana Constitution the primary objective of punishment is rehabilitation, not retribution. "The penal code shall be founded on the principles of reformation, and not of vindictive justice." Ind. Const. art. 1, § 18. Second, in addition to deterrence there are other objectives as well, including the need to protect the community by sequestration of the offender and community condemnation of the offender. Wallace, ___ N.E.2d at ___, slip op. at 14.

There is no question that the Act's deterrent effect is substantial and that the Act promotes community condemnation of offenders – both of which are traditional aims of

8

punishment. But this is so whether applied to an offender who is required to register for ten years or an offender required to register for life. Essentially, as to this factor Jensen is in no different position now than he was before the Act was amended in 2006. Therefore this fourth factor favors treating the effects of the Act as non-punitive when applied to Jensen.

### 5. *Applicability Only to Criminal Behavior*

Under the fifth factor we consider "whether the behavior to which [the statute] applies is already a crime." Mendoza-Martinez, 372 U.S. at 168. The fact that a statute applies only to behavior that is already and exclusively criminal supports a conclusion that its effects are punitive. Wallace, __ N.E.2d __, slip op. at 15. There is no question that it is the determination of guilt for the offense of vicarious sexual gratification that triggered Jensen's lifetime registration requirement. This seems to support the view that the effects of the statute are punitive. However, when Jensen pleaded guilty to this offense in January 2000 he also was required to register as a sex offender, albeit for ten years. In short, Jensen's behavior was criminal both before and after the 2006 amendment. With the exception of an extended period of registration, Jensen is in the exact position he was in when he pleaded guilty. We conclude the fifth Mendoza-Martinez factor favors treating the effects of the Act as non-punitive when applied to Jensen.

### 6. *Advancing Non-punitive Interest*

We next ask whether, in the words of the Supreme Court, "an alternative purpose to which [the statute] may rationally be connected is assignable for it." Mendoza-Martinez, 372 U.S. at 168-69. This statement is best translated as an inquiry into whether the Act advances a legitimate regulatory purpose. Wallace, ___ N.E.2d at ___, slip op. at 16. The answer is yes. "We cannot disagree that 'the risk of recidivism posed by sex offenders is frightening and high or that registration systems are a legitimate way to protect the public from repeat offenders." Id. (internal quotation omitted) (alterations omitted). We thus conclude that the sixth Mendoza-Martinez factor also favors treating the effects of the Act as non-punitive when applied to Jensen.

*7. Excessiveness in Relation to State's Articulated Purpose*

Last we determine "whether [the Act] appears excessive in relation to the alternative purpose assigned." Mendoza-Martinez, 372 U.S. at 169. In Wallace we observed that those jurisdictions that have rejected ex post facto challenges to sex-offender registration statutes specifically noted that disclosures were limited to those necessary for public safety, and/or that an individualized finding of future dangerousness was made. Wallace, ___ N.E.2d ___, slip op. at 17. We also observed that the Indiana Act makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk. Id. at 18. Finding the Act excessive as to appellant Wallace, we determined that "the non-punitive purpose of the Act, although of unquestioned importance, does not serve to render as non-punitive a statute that is so broad and sweeping." Id. at 18.

But the effects of the Act apply to Jensen much differently than they applied to appellant Wallace. The "broad and sweeping" disclosure requirements were in place and applied to Jensen at the time of his guilty plea in January 2000. Nothing in that regard was changed by the 2006 amendments. And with regard to lifetime registration, we note that sexually violent predators may, after ten years, "petition the court to consider whether the person should no longer be considered a sexually violent predator." Ind. Code § 35-38-1-7.5(g) (2006). We conclude therefore that the seventh Mendoza-Martinez factor favors treating the effects of the Act as non-punitive when applied to Jensen.

In summary, of the seven factors identified by Mendoza-Martinez as relevant to the inquiry of whether a statute has a punitive effect despite legislative intent that the statute be regulatory and non-punitive, only three lean in favor of treating the effects of the Act as punitive when applied to Jensen. The remaining factors point in the other direction. Importantly, the last Mendoza-Martinez factor, which we afford "considerable weight in deciding whether the [Act is] punitive-in-fact," Wallace, ___ N.E.2d ___, slip op. at 17 (citation omitted), leans in favor of treating the Act as non-punitive when applied to Jensen. We conclude therefore that Jensen has not carried his burden of demonstrating that as applied to him the Act violates the Indiana

constitutional prohibition against ex post facto laws. On this issue we affirm the trial court's ruling. We now address Jensen's remaining claims, which the Court of Appeals did not reach.

## II.

Jensen contends that "[r]equiring Mr. Jensen to register as a sex offender for life violates his right to life, liberty, and the pursuit of happiness under the State and Federal Constitutions." Appellant's Br. at 11. We make the following observations. First, although Jensen cites the Fourteenth Amendment to the United States Constitution[5] and Article 1 section 1 of the Indiana Constitution[6] he advances no argument concerning the Federal Constitution. This claim is thus waived. Second, Jensen devotes slightly more than one page to his Indiana constitutional claim. In doing so he cites to a single case, Anthis v. State, 731 N.E.2d 446 (Ind. Ct. App. 2000). In that case the Indiana Court of Appeals determined that an earlier version of the Act did not violate any right to life, liberty, and the pursuit of happiness the defendant might have under the State Constitution. Id. at 447. Noting that the statute has now been amended, Jensen invites this court "to hold that the lifetime registration statutes be deemed unconstitutional under state and federal principles." Appellant's Br. at 12. Absent cogent argument or citation to authority, we decline the invitation. This claim is also waived. Trueblood v. State, 715 N.E.2d 1242, 1255 (Ind. 1999) (finding claim waived when defendant failed to cite authority or make cogent argument in its favor).

## III.

Jensen challenges the propriety of his plea agreement contending he did not enter it knowingly, intelligently, and voluntarily because he "was not properly advised at the time of his plea agreement that the State may require him to register as a sex offender for life." Appellant's Br. at 12. We first note that a person who pleads guilty is not permitted to challenge the

---

[5] The Fourteenth Amendment provides in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.

[6] Section 1 of the Bill of Rights of the Indiana Constitution provides in pertinent part, "WE DECLARE, That all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness." Ind. Const. art. 1, § 1.

propriety of that conviction on direct appeal. <u>Collins v. State</u>, 817 N.E.2d 230, 231 (Ind. 2004). Direct appeal challenges to sentences following guilty pleas are permitted only in "open pleas," that is, for sentences following plea agreements under which the trial court exercised sentencing discretion. <u>See, e.g.</u>, <u>Kling v. State</u>, 837 N.E.2d 502, 506 (Ind. 2005); <u>Gutermuth v. State</u>, 817 N.E.2d 233, 234 (Ind. 2004); <u>Tumulty v. State</u>, 666 N.E.2d 394, 396 (Ind. 1996). Instead, any challenge to a conviction imposed as a result of guilty plea where the trial court is exercising no discretion must be made through the procedure afforded by the Indiana Rules of Procedure for Post-Conviction Remedies. <u>Hall v. State</u>, 849 N.E.2d 466, 472 (Ind. 2006).

In this case the agreement negotiated between Jensen and the State called for Jensen to plead guilty to vicarious sexual gratification, as a Class C felony, and child molesting, as a Class C felony. <u>See</u> Appellant's App. at 36. Under the agreement Jensen was to be sentenced to concurrent terms of six years on both counts with three years executed and three years suspended to probation. <u>Id.</u> The trial court sentenced Jensen accordingly and thus exercised no discretion in doing so. Jensen's direct appeal is thus foreclosed.

Second, in response to Jensen's contention that he was not "properly advised" that the State would require him to register for life as a sex offender, we note that neither the State nor Jensen could possibly have anticipated six years in advance that the Act would be amended to include such a requirement. The important question of whether Jensen would have entered the plea agreement had he known such a requirement might later be included requires a factual inquiry that is best resolved through post-conviction proceedings.[7]

---

[7] We note however that if Jensen's guilty plea is set aside, so too is the six year sentence Jensen has already served. Nothing in Jensen's appellate papers suggests that he fully comprehends the consequences of a successful challenge to his plea of guilty, namely, he would be subject to prosecution for the original charges: a Class A felony and two Class C felonies. <u>See</u> <u>Patton v. State</u>, 810 N.E.2d 690, 696 (Ind. 2004) (Where defendant did not "sufficiently understand the nature of the charge to which he pleaded guilty" we reversed the denial of post-conviction relief and remanded "with instructions to grant [defendant] a new trial on the attempted murder charge.").

## Conclusion

We affirm the judgment of the trial court.

Shepard, C.J., concurs.

Sullivan, J., concurs in result with separate opinion.

Boehm, J., dissents with separate opinion in which Dickson, J., concurs.

**Sullivan, Justice, concurring in result.**

Jensen contends that he has been subjected to punishment on an ex post facto basis as a consequence of amendments to the Indiana Sex Offender Registration Act in 2006 that had the effect of converting his 10-year registration requirement into a lifetime registration requirement.[1] I do not believe Jensen's claim that these 2006 amendments imposed additional punishment on him is ripe for adjudication. For this reason, I concur only in the result of the Court's opinion.

Under the law in effect at the time of his conviction, Jensen is required to register under the Act for a period of 10 years following his release from incarceration. Only when the 10 year period has run – several years from now – will Jensen be subject to a registration requirement that might arguably be ex post facto. But, of course, the Legislature might very well change this statute prior to that date so that Jensen would not be subject to any additional registration requirement at all. Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. Ala. 1999) (Kirby's challenge to Alabama's Community Notification Statute held not ripe for adjudication because it was "a matter of speculation" as to whether the Act would remain in effect and unamended until Kirby's release from prison in 2005).

Jensen's claim is not ripe for another, separate reason. Under the Act, Jensen is entitled to petition the court for a determination that he should no longer be considered a sexually violent predator. I.C. 35-38-1-7.5(g) (Supp. 2007). He will be entitled to apply for this determination 10 years after the date of his release from incarceration. If he receives a favorable determination, he will not be subject to the registration or other requirements of the Act. Id. This means that even under the 2006 amendments, he might only be subject to the registration requirements of the Act for 10 years, the same period of time with respect to which he was initially subject to registration under the terms of the Act then in effect. The question presented in this case would be ripe for consideration by us only if a trial court to which such a petition is submitted determined that Jensen continues to be a sexually violent predator as defined in the Act. Artway v. Att'y Gen. of State of N.J., 81 F.3d 1235, 1242, 1248 (3d Cir. 1996) (Artway's challenges to

---

[1] Under the seven-factor test the Court adopts today in Wallace v. State, – N.E.2d –, No. 49S02-0803-CR-138 (Ind. 2009), I think it is beyond question that the lesser new obligations imposed by the 2006 amendments are not themselves punishment.

1

Megan's Law's notification provisions held not ripe for adjudication because "[s]ex offenders are subject to notification only if the prosecutor finds a significant risk of recidivism – a determination that, with respect to Artway, has not yet been made and cannot be easily forecasted.") (Becker, J.). Given Jensen's apparently blemish-free record of serving his term of imprisonment and probation and of complying in all respects with the Act, it "cannot be easily forecasted" that Jensen will be held subject to the Act after the end of the 10-year period.

**Boehm, Justice, dissenting.**

I respectfully dissent. I agree with the implicit holding of the majority that this case is ripe for resolution. However, I believe the enhanced registration requirements enacted in 2006 constitute an additional punishment that violates the Ex Post Facto Clause as applied to Jensen, whose crimes were committed in 1998.

Jensen pleaded guilty to vicarious sexual gratification, a class C felony, by inducing a child to fondle herself, and child molesting, also a class C felony, by "performing or submitting to fondling" with the same victim. He was sentenced to concurrent six-year terms, with three years of each sentence suspended.

At the time Jensen committed his crimes in 1998, the law provided that he must register as a sex offender for ten years after release from prison. Ind. Code Ann. § 5-2-12-13 (West Supp. 1997 & 1998). In 2006, the legislature designated persons committing certain types of vicarious sexual gratification, including Jensen's offenses, as "sexually violent predators." These same amendments extended the registration period for those offenders from ten years to the life of the offender and imposed several other requirements on them. P.L. 173-2006, §§ 4, 13, 21 (codified at Ind. Code §§ 11-8-8-6, -19, 35-38-1-7.5 (West Supp. 2008)).

There are several problems in applying the 2006 registration requirements to 1998 offenders. First, the 2006 law extends the period of registration from 10 years to life. We hold today in Wallace v. State that the registration requirement is punitive and therefore cannot constitutionally be applied to a person whose crime occurred before the statute was enacted. The majority holds that the same conclusion does not apply to a person whose crime occurred at a time when only a ten-year registration was required. It is beyond dispute that a law extending the period of incarceration for a crime cannot apply to persons whose offense predates the effective date of that legislation. Weaver v. Graham, 450 U.S. 24, 28 (1981). It seems to me that if the registration requirement is punitive, extending its period is no less additional punishment than extending a period of incarceration, and equally violates the constitutional ban on ex post facto legislation.

1

I also do not agree with the majority's analysis of the factors described in <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144, 168–69 (1963). The majority concedes that Jensen's registration requirement is triggered by scienter, and that the sanction is imposed only for criminal activity. Both of these suggest a punitive statute. The 2006 amendments also impose an affirmative disability or restraint. They do more than extend the length of Jensen's registration period—they require him to register as a "sexually violent predator" rather than as a "sex offender." This change in status requires Jensen's online registration to state that he is a "sexually violent predator" who is "required to register for life." I.C. § 11-8-8-8(a)(5), (6) (West Supp. 2008). Another new requirement imposed on "sexually violent predators" is that they now must notify authorities of their destination and the duration of their absence when they plan to travel from their principal residence for more than seventy-two hours. <u>Id.</u> § 11-8-8-18.

In my view, the 2006 amendments exhibit yet another aspect of a punitive provision because they promote the traditional aims of punishment. The majority, quoting <u>Mendoza-Martinez</u>, describes these aims as "deterrence and retribution." Forty years ago, when <u>Mendoza-Martinez</u> was decided, deterrence was often described as the more general concept of "preventing offenses." <u>Model Penal Code</u> § 1.02(2)(a) & cmt. 3(a) (1962) (revised comments 1985). This was understood to include both deterrence of the general population by setting an example, and deterrence of the convicted individual, including rendering future crimes impossible, for example by incarceration. <u>Id.</u> More recent thinking views incapacitation—which constrains the offender from further crimes—as distinct from deterrence of the offender and others by threat of future punishment. 1 Wayne R. LaFave, <u>Substantive Criminal Law</u> § 1.5(a) (2d ed. 2003); 1 Charles E. Torcia, <u>Wharton's Criminal Law</u> § 1 (15th ed. 1993). The registration requirement, although less restrictive than incarceration, incapacitates the offender by effectively constraining travel and providing authorities and the public with information to monitor the individual continuously.

Moreover, there is an aspect of retribution to these provisions. As the majority notes, the Indiana Constitution prohibits "vindictive justice" as an object of the penal code. Nevertheless, registration is akin to a "shaming penalty" requiring an offender to undertake the unpleasant task of broadcasting his offense—a sanction many view as retributive. LaFave, <u>supra</u>, at § 1.5(a)

2

n.34. This factor further supports the conclusion that the amended registration requirements are punitive.

In my view, the seventh Mendoza-Martinez factor is entitled to the greatest weight and is most important in determining these sanctions to be punitive. Without some individualized determination of continued risk, the requirements of the 2006 amendments are excessive in relation to their stated purpose. The majority stresses that under the law in effect at the time of his offenses Jensen was subject to registration, albeit with different consequences. It may be true in this day of internet searches that a person is permanently scarred by the shaming of reputation resulting from the sanction in place at the time of Jensen's crime. But the newly enacted requirement of additional lifetime publication of Jensen's picture captioned "Sex Predator" in flashing red letters surely is of some severe consequence, and requires some determination that it remains appropriate for the individual offender a decade after the crime.

Finally, I disagree with Justice Sullivan's conclusion that Jensen's claim is not yet ripe for adjudication. As already noted, the 2006 statute imposed new requirements on Jensen in addition to lengthening the period of required registration. Because these new requirements applied to Jensen on the statute's 2006 effective date, Jensen is entitled to challenge their constitutionality now.

I also disagree with Justice Sullivan's reliance on Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999), and Artway v. Attorney General, 81 F.3d 1235 (3d Cir. 1996). In Kirby, the defendant challenging the sex offender registry was incarcerated and would not have to register for another six years. 195 F.3d at 1290. The Eleventh Circuit noted that he "face[d] no hardship from denying review of his notification challenge at this point; he is not going anywhere and his prior arrest and conviction record is not going to change." Id. Unlike that defendant, Jensen had registered as a sex offender and faces the hardships described above if he is required to register as a "sexually violent predator."

Artway is similarly inapposite. The defendant in that case challenged the notification provisions of New Jersey's sex offender registry, which differs from Indiana's in important respects. Under New Jersey's registry, the offender provides information which is forwarded to the county prosecutor, who determines the offender's risk of re-offense. 81 F.3d at 1243. If the

3

prosecutor determines the risk to be low, notification is provided to law enforcement agencies; if moderate, to schools and daycares; if high, to members of the public likely to encounter the offender. Id. at 1243–44. The defendant in Artway challenged the notification provisions of the registry but had not yet been classified as a moderate or high risk. Id. at 1248. The Third Circuit concluded that he could seek to enjoin notification only after being classified as a moderate or high risk. Id. at 1248–49. In contrast, Jensen has already been classified as a sexually violent predator, with the accompanying notification to the general public, by operation of the 2006 amendments. His challenge to those amendments is therefore ripe for adjudication.

Dickson, J., concurs.